IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

FRANK MARTINES LAWRENCE,                                          PLAINTIFF
#07934-20

v.                              4:21CV00026-LPR-JTK

NATALIE COBB, et al.                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Lee P. Rudofsky. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

1

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I.   Introduction

Plaintiff Frank Martines Lawrence ("Plaintiff") is incarcerated at the Pulaski County Detention Center ("Detention Center"). Plaintiff sued APRN Natalie Cobb[1] and Bertha Lowe, identified as the Medical Director (collectively, "Defendants"), in their personal and official capacities. (Doc. No. 2 at 1-2). Plaintiff alleges deliberate indifference to his serious medical needs and seeks damages, among other relief. (Doc. No. 2 at 4-5; Doc. No. 3).

Defendants have filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts on the issue of exhaustion. (Doc. Nos. 16-18). Because Plaintiff had not responded, on October 4, 2021 the Court directed Plaintiff to file a response within 15 days. (Doc. No. 19). The Order cautioned Plaintiff that if he did not file a response, all of the facts set forth in Defendants' summary judgment papers could be deemed admitted, among other possible consequences. (Id. at 2.) Plaintiff has not filed a response, and the time for doing so has passed.

---

[1] The Clerk of the Court is directed to change Defendants names on the docket to Natalie Cobb and Bertha Lowe. (Doc. No. 9 at 1).

2

After careful consideration, and for the reasons set out below, the Court recommends Defendants' Motion be granted.

## II.    Plaintiff's Complaint

Plaintiff alleges he has a "multi-year history of cholecystitis, with an ever increasing during of pain." (Doc. No. 2 at 4). Plaintiff had an ultrasound of his gallbladder on December 10, 2020. (Id.). On Monday, December 14, Defendant Cobb informed Plaintiff that the ultrasound revealed "multiple stones of different sizes in [Plaintiff's] gallbladder." (Id.). Plaintiff asked to be referred to a surgeon to have the stones removed. (Id.). Defendant Cobb allegedly told Plaintiff that "since the stones were not obstructing the common bile duct, she was not going to do anything." (Id.). When Plaintiff asked about pain relief, Defendant Cobb prescribed Meloxicam. (Id.).

Defendant Cobb then visited Plaintiff on January 8, 2020 "to discuss inflamed gallbladder pain, nausea, and vomiting." (Doc. No. 3). Defendant Cobb purportedly told Plaintiff that "she and medical director Lowe have decided to wait until the gallbladder ruptures, then have it surgically removed along with the gallstones." (Id.). Plaintiff again asked for an outside consult, but Defendant Cobb again told him that "the stones would have to block the common bile duct and [Plaintiff] would have extreme nausea and vomiting, greater than he has now." (Id.). Defendant Cobb continued to give Plaintiff Phenagren to control his nausea. (Id.). Plaintiff explained he had insurance and wanted to have the surgery done as soon as possible, but to no avail. (Id.).

Plaintiff maintains Defendants Cobb and Lowe placed his life in jeopardy by not referring him for a surgical consult and scheduling a cholecystectomy. (Doc. No. 2 at 4; Doc. No. 3).

3

### III.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

### IV.  Undisputed Facts and Analysis

Plaintiff alleges deliberate indifference to his serious medical needs. As an initial matter, the Court notes that Plaintiff has not filed a response to Defendants' Motion. He has not

4

controverted any material fact set forth by Defendants in their statements of undisputed material facts. Accordingly, all material facts submitted by Defendants (Doc. No. 17) are deemed admitted. Local Rule 56.1(c) of the Eastern and Western Districts of Arkansas; FED. R. CIV. P. 56(e).

### A.   Official Capacity Claims

Plaintiff sued Defendants in their official and personal capacities. Plaintiff's official capacity damages claims against Defendants are the equivalent of claims against their employer, Turn Key. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (1993). To succeed on a claim against Turn Key, Plaintiff would have had to establish that a Turn Key policy or custom was the driving force behind the violation of Plaintiff's rights. See Id.

Because Plaintiff has not come forward with evidence that a Turn Key policy or custom resulted in violation of his rights, summary judgment in Defendants' favor on Plaintiff's official capacity claims is appropriate.

### B.   Personal Capacity Claims—Deliberate Indifference to Serious Medical Needs

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration.'" Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d

905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. *See Washington v. Denney*, 900 F.3d 549, 559 (8th Cir. 2018); *McRaven v. Sanders*, 577 F.3d 974, 981 (8th 2009).

At the time of the incidents giving rise to Plaintiff's Complaint, Defendant Lowe was an Administrative Assistant employed by Turn Key, which contracts with the Pulaski County Sheriff's Office to provide medical care to inmates in the Detention Center; Defendant Lowe never has been Medical Director for Turn Key (Doc. No. 17 at ¶¶ 4-6; Doc. No. 16-2; Doc. No. 16-3 at ¶¶1-2). Defendant Lowe is not a health professional and never had any personal involvement with Plaintiff's medical care. (Doc. No. 17 at ¶¶ 40, 95-97; Doc. No. 16-3 at ¶¶ 4-9).

Defendant Cobb became employed with Turn Key as a nurse practitioner on November 2, 2020. (Doc. No. 17 at ¶ 29; Doc. No. 16-1 at ¶ 3). As detailed below, Defendant Cobb did provide Plaintiff with medical care.

Cholecystitis is a redness and inflammation of the gallbladder that occurs when bile gets trapped in the gallbladder. (Doc. No. 17 at ¶ 3; Doc. No. 16-1 at ¶ 9). Upon being booked into the Detention Center, Plaintiff did not report a history of cholecystitis or gallstones, and he did not exhibit symptoms concerning for cholecystitis during his Medical Intake Screening on July 16, 2020. (Doc. No. 17 at ¶¶ 8-9; Doc. No. 16-6 at 81-84). Rather, Plaintiff specifically denied having a history of gallbladder disease when asked by a Turn Key nurse on July 22, 2020. (Doc.

No. 17 at ¶ 10; Doc. No. 16-6 at 90). During a physical on August 5, 2020, and during other medical encounters in August 2020, Plaintiff likewise did not report any history of gallstones, gallbladder concerns, or cholecystitis. (Doc. No. 17 at ¶¶ 11-14; Doc. No. 16-6 at 103-106, 152-157, 495).

On August 24, 2020, Plaintiff had labs drawn. (Doc. No. 17 at ¶¶ 15-16; Doc. No. 16-6 at 495). The August 24, 2020 labs did not reflect any indication that Plaintiff suffered from gallbladder issues. (Doc. No. 17 at ¶¶ 16-21; Doc. No. 16-1 at ¶¶ 1-3, 17-20, 22-23). During September and October, 2020, Plaintiff did not raise gallbladder related issues during medical visits. (Doc. No. 17 at ¶¶ 22-25; Doc. No. 16-6 at 124, 158-163, 495). Plaintiff first made a complaint related to his gallbladder on November 14, 2020. (Doc. No. 17 at ¶¶ 26, 28; Doc. No. 16-8 at 1). That was also the first time Plaintiff reported his medical history of cholecystitis. (Doc. No. 17 at ¶ 27; Doc. No. 16-8 at 1).

A Turn Key nurse saw Plaintiff on November 16, 2020 in response to Plaintiff's sick call, and labs were drawn to assess Plaintiff's gallbladder condition. (Doc. No. 17 at ¶ 32; Doc. No. 16-6 at 496). On November 20, 2020 A Nurse Practitioner Roberts reviewed Plaintiff's lab results. (Doc. No. 17 at ¶ 33; Doc. No. 16-7 at 4). The November 16, 2020 lab results did not indicate the presence of a blocked common bile duct or a diagnosis of cholecystitis. (Doc. No. 17 at ¶ 34; Doc. No. 16-7 at 4).

Plaintiff submitted a second sick call request in connection with his gallbladder. (Doc. No. 17 at ¶ 36; Doc. No. 16-8 at 2). A Turn Key nurse saw Plaintiff on November 24, 2020, and obtained HIPPA releases to obtain Plaintiff's outside medical records. (Doc. No. 17 at ¶ 37; Doc. No. 16-6 at 496). Plaintiff's blood was drawn on December 4, 2020 for follow up labs. (Doc.

No. 17 at ¶ 38; Doc. No. 16-7 at 5).  Defendant Cobb reviewed the lab results; the labs did not indicate the presence of any bile duct obstruction.  (Doc. No. 17 at ¶ 40; Doc. No. 16-7 at 5).

On December 7, 2020, Plaintiff complained again of possible gallbladder pain.  (Doc. No. 17 at ¶ 41; Doc. No. 16-6 at 464-465).  Defendant Cobb saw Plaintiff on December 8, 2020.  (Doc. No. 17 at ¶ 42; Doc. No. 16-6 at 168-172).  That was Defendant Cobb's first encounter with Plaintiff.  (Doc. No. 17 at ¶ 41; Doc. No. 16-6 at 168-172).  During the visit, Plaintiff complained of pain related to a fall in the shower in July, said he was experiencing pain in the upper right quadrant, and explained he had a remote history of gallstones four years earlier.  (Doc. No. 17 at ¶ 43; Doc. No. 16-6 at 168).  After examining Plaintiff and reviewing his lab work, Defendant Cobb gave Plaintiff a prescription treatment for potential cholecystitis; she also ordered an ultrasound of Plaintiff's abdomen.  (Doc. No. 17 at ¶¶ 45-47; Doc. No. 16-6 at 172, 328; Doc. No. 16-9).

Defendant Cobb reviewed the December 15, 2020 ultrasound results.  Defendant Cobb explained to Plaintiff that the ultrasound findings showed he did not have cholecystitis.  (Doc. No. 17 at ¶ 53; Doc. No. 16-6 at 172; Doc. No. 16-9).  The ultrasound also showed that Plaintiff had gallstones, but the gallstones were not obstructing Plaintiff's common bile duct.  (Doc. No. 17 at ¶¶ 53-55, 80-81; Doc. No. 16-6 at 172; Doc. No. 16-9; ).

According to Defendant Cobb, gallstones are a common ultrasound finding and, by themselves, do not indicate an imminent risk of harm.  (Doc. No. 17 at ¶ 56; Doc. No. 16-1 at ¶ 56).  Most gallstones resolve without medical intervention.  (Doc. No. 17 at ¶ 57; Doc. No. 16-1 at ¶ 50).  Further, pain caused by gallstones generally occurs in episodes of short duration, generally subsiding with hours.  (Doc. No. 17 at ¶ 58; Doc. No. 16-1 at ¶ 51).  In Plaintiff's case, neither surgery nor transfer to a hospital was necessary because he did not have cholecystitis and

his gallstones were not obstructing his common bile duct. (Doc. No. 17 at ¶ 59; Doc. No. 16-1 at ¶ 52). Defendant Cobb prescribed Plaintiff additional pain medication when his prescription to treat his pain expired. (Doc. No. 17 at ¶¶ 60-63; Doc. No. 16-6 at 217-218). Treating Plaintiff's gallstones with pain medication was appropriate, reasonable, and within the standard or care. (Doc. No. 17 at ¶¶ 60, 63; Doc. No. 16-4 at ¶ 7).

Plaintiff did not make gallbladder related complaints again until January 7, 2020; Plaintiff then asked to be referred to a surgeon for a cholecystectomy. (Doc. No. 17 at ¶¶ 65-66; Doc. No. 16-6 at 471). When Defendant Cobb saw Plaintiff the next day, Plaintiff complained that his gallbladder was exploding and asked that surgery to remove his gallbladder be scheduled. (Doc. No. 17 at ¶¶ 67-69; Doc. No. 16-6 at 172). Defendant Cobb explained that Plaintiff's gallstones did not indicate cholecystitis or any blockage, so surgery would not be scheduled during Plaintiff's incarceration as it was not clinically indicated, but that if he showed symptoms of obstruction, he would be taken to the emergency room. (Doc. No. 17 at ¶¶ 68-69, 82-84; Doc. No. 16-6 at 172). Defendant Cobb further explained that Plaintiff's medical insurance would not cover the cost of surgery because it was not medically necessary. (Doc. No. 17 at ¶ 70; Doc. No. 16-6 at 172). Plaintiff made no further complaints of gallbladder pain. (Doc. No. 17 at ¶¶ 72-76). Additional lab work did not indicate gallbladder problems. (Doc. No. 17 at ¶¶ 77-78; Doc. No. 16-11 at 1-3). Plaintiff's gallstones resolved with the prescription treatment he received from Defendant Cobb; Plaintiff never suffered from cholecystitis or obstruction from gallstones during his incarceration at the Detention Center. (Doc. No. 17 at ¶¶ 85-91). Plaintiff suffered no injury as a result of the care and treatment he received at the Detention Center. (Doc. No. 17 at ¶ 93; Doc. No. 16-4 at ¶ 7).

1.  **Defendant Lowe**

The evidence in the record reflects that Defendant Lowe did not have personal knowledge of Plaintiff's medical conditions or care. (Doc. No. 16-3). Further, Defendant Lowe is not a medical provider; she provides administrative non-patient care for Turn Key Health Clinics at the Detention Center. (Id. at ¶ 4).

Because Defendant Lowe is not a medical provider, she would have been justified in relying on a medical professional's diagnosis and course of treatment. Holden v. Hirner, 663 F.3d 336, 343 (8th Cir. 2011). Additionally, there is no supervisory liability in 42 U.S.C. § 1983 claims. Wise v. Lappin, 674 F.3d 939, 942 (8th Cir. 2012). Nothing in the record indicates deliberate indifference on the part of Defendant Lowe. Accordingly, summary judgment in Defendant Lowe's favor is appropriate.

2.  **Defendant Cobb**

Plaintiff maintains Defendant Cobb was deliberately indifferent to his serious medical needs. Based on the evidence, the Court cannot agree. Plaintiff's medical complaints were promptly addressed. He underwent testing and saw various providers. Defendant Cobb prescribed Plaintiff medication to treat both his pain and his condition. Notably, the treatment worked: Plaintiff's gallstones resolved with the treatment provided and Plaintiff suffered no injury as a result of the care he received. (Doc. No. 17 at ¶¶ 87, 93; Doc. No. 16-4 at ¶ 7).

Plaintiff may have preferred a different course of medical action. But as the Court of Appeals for the Eighth Circuit has explained, "mere disagreement with treatment decisions . . . does not rise to the level of a constitutional violation." Cejvanovic v. Ludwick, 923 F.3d 503, 507-08 (8th Cir. 2019). As such, summary judgment in Defendants' favor is appropriate.

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted). Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, Defendants' Motion should be granted.

**V. Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 16) be GRANTED.

2. Plaintiff's Complaint (Doc. Nos. 2, 3) be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 21st day of October, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE